UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Johnson Electric North America,

      Plaintiff,

vs                                                     Case No: 10-13184
                                                       Honorable Victoria A. Roberts

CRH North America, Inc.,

      Defendant.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.   BACKGROUND**

Johnson Electric North America ("JENA") filed this declaratory judgment action against

CRH North America, Inc. ("CRH").  JENA supplies motors for power seat adjusters (the

"Parts") to CRH.  CRH uses the Parts to manufacture and supply seating systems and seat

structures to various automotive original equipment manufacturers, including Ford Motor

Company, through Tier 1 suppliers.  JENA and CRH dispute whether their agreement required

JENA to supply the Parts for the life of the Ford Motor Company F-Family program, (a

"Requirements Contract"), or whether it was a contract to supply Parts as may periodically be

requested based on a fixed, specified quantity (a "Fixed Quantity Contract").  The F-Family

Program included the Taurus, Explorer and certain Lincoln models.  A Requirements Contract

would require JENA to supply CRH with as many Parts as it needs for as long as it needs, under

the F-Family program.  A Fixed Quantity Contract would require JENA to supply only the

quantity of Parts set forth in firm Releases which were issued periodically.

1

The Court finds that JENA and CRH had a Fixed Quantity Contract rather than a Requirements Contract.

Judgment will enter under FRCP 58 in JENA's favor.

Even if it were a Requirements Contract, such agreements are terminable at will upon reasonable notice.  JENA provided that notice to CRH.

However, because of agreements reached by the parties that CRH refrain from seeking alternate vendors until a ruling from this Court, JENA's notice becomes effective on the date of this Order.  JENA will continue to supply Parts to CRH for 12 months from this date so that CRH will have sufficient time to contract with another supplier for the Parts.

By stipulation entered on June 10, 2011 and Amended on August 4, 2011, the parties agreed to submit this matter to the Court for findings and conclusions, under FRCP 52(a), without benefit of trial.

The following was submitted to the Court for consideration:

1. Stipulated Proposed Findings of Undisputed Facts;

2. Plaintiff Johnson Electric North America's Inc.'s Summary Bench Trial Brief;

3. Defendant CRH North America, Inc.'s Trial Brief;

4. Plaintiff Johnson Electric North America, Inc.'s Response to Plaintiff's Summary Bench Trial Brief;

5. Defendant CRH North America, Inc.'s Response to Plaintiff's Summary Bench Trial Brief;

6. Plaintiff Johnson Electric North America, Inc.'s Brief in Reply to

2

Defendant CRH North America Inc.'s Response Brief;

7.      Defendant CRH North America, Inc.'s Trial Brief Reply;

8.      Documents filed under seal;

9.      Excerpts of deposition transcripts referred to in the pleadings listed above,
including Kevin Seiler's separate deposition record; and

10.     Appendix of documents.


## II.   FINDINGS OF FACT

The Court incorporates the 251 Stipulated Proposed Findings of Undisputed Facts
submitted by the parties, and makes these additional findings.

### A.   THE CONTRACT DOCUMENTS AND WHAT THEY SAY

1.      CRH's 2008-2009 version of the Terms and Conditions are at issue.

2.      The Terms and Conditions, incorporated into CRH's Scheduling Agreements,
make clear that the potential sources for contractual terms between the parties are limited to one
or more of the following documents: Purchase Orders, Supply Agreements, Schedule Order
Releases/Release Agreements ("Releases"), Scheduling Agreements; Requests for Quotation or
Proposal, Letters of Intent, Confidentiality Agreements and the Terms and Conditions.

3.      The Terms and Conditions make clear that letters of intent -- standing alone --
are not binding on CRH or its vendors unless the letters of intent make reference to an otherwise
binding arrangement between the parties, in which case the Terms and Conditions also apply.

4.      Although JENA and CRH exchanged various letters of intent, no letter of intent
between them ever made reference to a "binding arrangement" between them.  The documents

3

that make the binding arrangement, in combination with the Terms and Conditions, are the Purchasing Documents.

5.      With regularity beginning October, 2007, the only documents  the parties exchanged concerning the Parts, were Scheduling Agreements and Releases.

6.      Each Scheduling Agreement: (1) lists products by number, (2) states target quantity of product units and price per unit, and (3) states a total price for the quantity of product units identified.   Each Scheduling Agreement includes terms of delivery, and "valid from" and "valid to" dates.

7.      The "target" quantities in Scheduling Agreements were not intended to bind JENA to ship a specific quantity of Parts.  Instead, CRH relied on Releases to specify the quantity of Parts it actually ordered and needed delivery on, at any given time.

8       Each Release listed specific quantities and specific delivery dates for shipment.

9.      On the other hand, Scheduling Agreements did not contain "firm" quantities; rather, they set forth "target quantities."

10.     The Terms and Conditions say the Releases CRH issued to JENA were  intended to control the timing, quantity, and delivery of goods ordered through purchase orders or supply agreements that contemplate multiple deliveries of goods either on a requirements basis or on a fixed quantity basis with multiple deliveries.  The Releases may contain  projections of quantities needed throughout the term of the order and may contain or refer to expected quantities for forecasting purposes.

11.     The Terms and Conditions stated that CRH is not obligated to purchase any quantities other than those designated as firm.

4

12.     There is ambiguity in the meaning of the "valid to" date of "12/31/2015" in the Scheduling Agreements, and it is not clear that such language was intended to obligate JENA to supply Parts beyond what each signed Release required it to supply.

13.     CRH'S theory -- that the "Valid to: 12/31/2015" date really means "end of the F-Family Program" -- is not supported by evidence.  The estimated end of the F-Family Program varied, but no projected date matches the date in CRH's Scheduling Agreements.

14.     There is no language in the Scheduling Agreements or Releases that the contract between JENA and CRH is on a requirements basis, for the "life of the parts" or for the "life" of the "F-Family Program."

15.     Moreover, there is a termination provision in the Terms and Conditions which says that CRH reserves the right to discontinue the purchase of goods and services for CRH's convenience when CRH determines in its sole and absolute discretion that business circumstances warrant discontinuing the purchase of goods.

16.     No Releases were issued prior to October, 2007, which is when JENA began shipping Parts to CRH, in the quantities called for in the Releases.

17.     The Scheduling Agreements, Releases and Terms and Conditions contain the entire agreement between the parties by virtue of a merger/integration clause.  These are the Purchasing Documents between JENA and CRH.

## B.   MERGER, INTEGRATION

18.     The Terms and Conditions contain a merger/integration clause which states "all purchasing documents and these Terms and Conditions contain the entire understanding of the parties and are intended as a final expression of their agreement."  There were never any

5

Purchasing Documents between the parties, beyond Scheduling Agreements, Releases and the Terms and Conditions.

19.     The merger/integration clause also says the Purchasing Documents "may not be amended, modified or otherwise supplemented unless such amendments, modifications or supplements are in writing and signed by Buyer's authorized representative."

20.     There were  no written amendments, modification or supplements to the Scheduling Agreements or Releases.

## C.   NOTICE OF TERMINATION

21.     JENA gave notice of termination to CRH in May, 2010 that it intended to terminate the parties' relationship "within the next six months."

## III.   CONCLUSIONS OF LAW

1.     This matter is before the Court under 28 U.S.C. § 1332, diversity jurisdiction.

2.     The Court applies the law of the State of Michigan.

3.     The sale of goods in excess of $1,000.00 is at issue.  Accordingly, the Court applies Michigan's version of the Uniform Commercial Code ("UCC"), MCL §440.1101, *et seq.*

4.     Common law does not govern the sale of goods under the UCC.  *Fisher Sand and Gravel Co. v. Neal A. Sweebe, Inc.*, — N.W.2d —, 2011 WL 2201049 (Mich. Ct. App. 2011).

5.     CRH's Scheduling Agreements "delineated a schedule of prices and set forth the terms and conditions of sale which would apply if orders were made."  *Thomas J. Kline v Lorillard, Inc.*, 878 F.2d 791, 794 (4th Cir. 1989).

6.     The Scheduling Agreements themselves were not "an order or other offer to buy goods for prompt or current shipment."  MCL § 440.2206(b).

7.      Blanket purchase orders -- which CRH's Scheduling Agreements were -- are not a contract for a specific volume of parts, nor are they requirements contracts obligating CRH to continue to buy Parts from JENA.  Each time a specific Release under a Scheduling Agreement is fulfilled by JENA, the contractual relationship, in essence, ends unless CRH issues another Release.  *See In Re: Dana Corp.*, No. 06-10354 (BRL), 2007 WL 4105714 (Bankr. S.D.N.Y. Nov. 14, 2007) (applying Mich. law); *Advanced Plastics v. White Consol. Ind., Inc.*, 47 F.3d 1167, 1995 WL 193791 at *1 (6th Cir. 1995); *Harris Thomas Ind., Inc. v. ZF Lemforder Corp.*, No. 06-cv-190, 2007 WL 3071676 at *6 (S.D. Ohio Oct. 19, 2007).

8.      To be a Requirements Contract, the agreement itself must provide that the buyer will purchase its needs or requirements from the seller.  *Advance Plastics v White Consol. Ind., Inc.*, 828 F. Supp 484, 488, n. 1 (E.D. Mich 1993), aff'd 47 F.3d 1167, 1995 WL 19379 (6th Cir. 1995).

9.      An agreement cannot be a Requirements Contract if it does not require the parties to do business with each other and if it imposes no minimum volume.  *Brooklyn Bagel Corp., Inc. v. Earthgrains Refrigerated Dough Prods. Inc.,* 212 F.3d 373, 379 (7th Cir. 2000).

10.     This was not a Requirements Contract between JENA and CRH, inasmuch as JENA was obligated to supply only the Parts specified in periodic Releases from CRH.

11.     Instead, CRH's Scheduling Agreements were "blanket purchase orders;" meaning no order is placed and no quantity is determined until a Release was issued against the blanket purchase order.  *Detroit Radiant Prods. Co. v. BSH Home Appliances Corp.*, 473 F.3d 623, 631 (6th Cir. 2007).

12.     The mere fact that CRH may have purchased all of its Parts from JENA for the F-

7

Family Program, does not mean the parties had a Requirements Contract. "Though it appears that, in the course of their normal business agreement, Aleris may have, in fact, supplied Valeo's requirements, this does not necessarily mean that Aleris had a continuing obligation to do so." *Aleris Aluminum Canada L.P. v. Valeo, Inc.*, 718 F. Supp. 2d 825, 833-34 (E.D. Mich. 2010).

13.     JENA and CRH had a Fixed Quantity Contract for JENA to supply the Parts based on periodically issued Releases from CRH which JENA accepted.

14.     Even in a UCC case such as this, merger/integration clauses are applicable and enforceable when the written contract is the final, complete and integrated statement of the parties' agreement; the parol evidence rule prohibits the parties from introducing extrinsic evidence of the terms of the agreement. *Tibco Software, Inc. v. Gordon Food Service, Inc.*, No. 1:03-CV-25, 2003 WL 21683850 at *7 (W.D. Mich. July 3, 2003); *Taurus Mold, Inc. v. TRW Automotive US, LLC*, No. 282269, 2009 WL 80974 at *6 (Mich Ct. App. Jan. 13, 2009).

15.     Since the Court finds the Scheduling Agreements, Releases and Terms and Conditions to be the complete and exclusive expression of the agreement between JENA and CRH, the terms of the contract may not be explained or supplemented by parol evidence. MCL § 440.2202.

16.     CRH is barred from relying on extrinsic evidence to supplement the Scheduling Agreements or the Releases with additional terms.

17.     A contract for the life of a part or program is indefinite and terminable at will. *Advance Plastics Corp. v. White Consol. Ind., Inc.*, 838 F. Supp. 484, 489 (E.D. Mich. 1993), aff'd 47 F.3d 1167, 1995 WL 19379 (6th Cir. 1995).

18.     Notice of such termination must be reasonable. *Sundram Fasterns Ltd. v.*

8

*Flexitech, Inc.*, No. 08-CV-13103, 2009 WL 3763772 at *9 (E.D. Mich. Nov. 9, 2009).

19.    JENA's notice of termination to CRH was reasonable; it was given at a time that it had fulfilled all of CRH's outstanding requests for Parts.  *Id.* at *9.

## IV.    CONCLUSION

Under FRCP 58, the Court enters judgment in favor of JENA, and declares:

1.    There is no Requirement Contract between JENA and CRH.

2.    This is a Fixed Quantity Contract, and JENA is only obligated to supply the quantity of Parts listed in issued Releases that it accepts.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  December 2, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 2, 2011.

S/Linda Vertriest
Deputy Clerk

9